Turney, J.,
delivered the opinion of the Court.
A writing in the words: “Rec’d June 2, 1864, of J. J. Polk, Esq., fifteen thousand dollars New York funds to be converted into coin, and hand Brown Bros to be forwarded Brown, Shipley & Co. as they did for Thomas Boyle 20th ult. . J. B. Kirtland,” is not merely a simple receipt, subject to ordinary rules of explanation and contradiction, but is an un *293 -dertaking to convert and deliver to Brown Bros.; and obligates the party making it to see that the currency is not only converted, but that the coin is delivered to Brown Bros. When the coin shall have been thus delivered, and instructions given for its transmission to Brown, Shipley & Co., as expressed in the undertaking of Kirtland, then, and not before, is his responsibility at an end; and a responsibility attaches to Brown Bros., should they receive it as directed. To -relieve himself from liability it is incumbent on Kirt-land to show that while in the exercise of a proper effort to execute his undertaking, he was, without the want of proper care and diligence on his part, prevented.
In this case a discussion of the different grades of bailment is unnecessary, the facts making defendant, Kirtland, liable, even though he were a mere manda-tary. The currency was placed in his hands on the 2d of June; on the 7th he left for New York, the place of business of Kirtland & Co., as well as of Brown Bros. While in New York he gave no attention to the business, although he had, on the 2d of June, written to Kirtland & Co., who were indebted to him in an amount nearly two hundred thousand dollars: “Such gold and silver as belongs to J. J. Polk individually, please hand Messrs. Brown Bros. & Co., to use as they did for Thomas Boyle, 20th ult. You will also use fifteen thousand dollars currency and buy gold and hand me, to be used as above, i. e., in the name of J. J. Polk.”
Again, in September, Kirtland was in New York, *294 and failed to look after or make inquiry touching the action of Kirtland & Co. as to the gold purchased with currency. No action is shown to have been taken, nor inquiry made, by J. E. Kirtland, until in November, about the time of the failure of Kirtland & Co., when he writes to them “to forward. the receipt of Brown Bros. & Co. for that gold.”
The history of the transaction leaves no doubt of the fact that Kirtland, intending to go to New York at an early day, and having an opportunity to procure from Polk funds to be used in his business at Memphis, undertook to collect at home about fifteen thousand dollars of the indebtedness to him by Kirtland & Co. We think it equally clear that Polk knew the source and means by, and of which, J. B. Kirtland expected to realize the coin. Yet, notwithstanding such knowledge and purpose on the part of both, we think there can be no doubt the parties negotiated upon the faith of the credit and solvency of J. B. Kirtland. The sole purpose of Polk was to secure a deposit of gold with Brown Bros., which deposit Kirtland undertook to make, in consideration of the fifteen thousand dollars currency, and difference in exchange.
The fact that Kirtland & Co. were solvent and in-good standing at the time, and were and had been, the bankers of Polk in his New York transactions, can make no difference; the credit was given directly to J. B. Kirtland, and he took upon himself the obligation. Reasoning on another view from the face of the paper, J. B. Kirtland, in applying the money- *295 furnished by Polk to be converted into coin, to his-own use, was guilty of conversion, -and thereby became the debtor of Polk. It- was not Polk’s means, but his own, with which the gold was purchased; the gold, by the purchase, became his in the room of the-currency exchanged for it. At no time could Polk have recovered the gold from Kirtland & Co., who held it as trustee for J. B. Kirtland, to be delivered to Brown Bros. The letter of instructions, to “use fifteen thousand dollars in currency to buy gold to be-used as above, i. e., in the name of J. J. Polk,”' was not a divestiture of the title of J. B. Kirtland, and gave to Polk no right of possession, and none-other than J. B. Kirtland could have controlled it in' or recovered it from the possession of Kirtland & Co. This state of ownership must have continued at least until the gold was delivered to Brown Bros., impressed .with the instructions to “forward to Brown, Shipley & Co. for Polk, as they did for Thomas Boyle.”' Kirtland & Co. had no right to say which one of many trusts, imaginable from the letter of directions to them, impressed the coin after its purchase. The defense of illegality is not well taken. There is no-notice of it in the pleadings, whose purpose is to advise parties of what they are to defend. Although commercial intercourse was prohibited by an act of Congress, there was a modification allowing permits or licenses. Every man being presumed to be innocent of violation of law, and to obey it, we are bound by the presumption until it is removed by proof responding to allegation or averment of breach.
*296 The defendant failing to make the defense, the complainant was not required to prove matter of special application, and properly presumed a waiver on the part of defendant.
Affirm the decree.